IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CLERKS OFFICE US DISTRICT COURT
AT HARRISONBURG, VA
FILED

06/22/2026

LAURA A. AUSTIN, CLERK
BY: /s/ Amy Fansler
DEPUTY CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 5:14-cr-00052 |
| | ) | |
| | ) | By: Michael F. Urbanski |
| CHRISTOPHER ROJUAN GILES, | ) | Senior United States District Judge |
| Defendant-Petitioner | ) | |

## MEMORANDUM OPINION

This matter comes before the court on defendant Christopher Rojuan Giles's second motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), commonly known as a motion for "compassionate release." ECF No. 201.[1] The Federal Public Defender (FPD) filed a supplemental motion on August 11, 2025, to which the government responded in opposition on September 10, 2025. ECF Nos. 206, 207. Giles filed a reply on October 10, 2025. ECF No. 209. For the reasons set forth below, the court will **DENY** Giles's pending motions for compassionate release.

### I. Background

On June 18, 2015, Giles entered into a Rule 11(c)(1)(C) plea agreement in which he pled guilty to one count of conspiracy to distribute heroin, the use of which resulted in the serious bodily injury and death of T.R.C., the serious bodily injury and death of R.F.L., the serious bodily injury of J.H.H., the serious bodily injury of B.D.W., the serious bodily injury of G.R.F., and the overdose of B.E.W., who died, in violation of 21 U.S.C. §§ 841(a)(1) and

---

[1] Giles filed his first motion on May 11, 2020, and the court denied it on June 22, 2020. ECF Nos. 132, 139.

841(b)(1)(C); conspiracy to distribute 1,000 grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); conspiracy to distribute 280 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); and conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); all in violation of 21 U.S.C. §§ 846, 841(b)(1)(A) and 841(b)(1)(C). Plea Agreement, ECF No. 71 at 1–2. Giles faced a statutory sentencing range of 20 years to life and a guidelines range of 292 to 365 months, based on his total offense level of 35 and his criminal history category of VI. Id. at 2; Pre-Sentence Investigation Report, (PSR), ECF No. 109 ¶¶ 82, 83.

The parties agreed to a sentence of between 264 to 360 months for Giles. Plea Agreement, ECF No. 71 at 4. The government also agreed not to pursue a sentence enhancement under 21 U.S.C. § 851. Id. at 4–5. On April 8, 2016, the court sentenced Giles to 300 months to be followed by a 6-year term of supervised release. J., ECF No. 107.

Giles also is serving a concurrent 20-year sentence for distribution of narcotics out of Maryland. ECF No. 206-1 at 7. This sentence was assessed after his federal sentence was imposed. Resp., ECF No. 207 at 2. In addition, he must serve a consecutive 27-month sentence for distributing Suboxone in prison. See United States v. Giles, No. 1:19-cr-308 (D.N.J. filed Jan. 15, 2019) at ECF Nos. 1 and 17. Giles has been incarcerated since his arrest on October 17, 2014, and has a projected release date of March 7, 2038.[2]

---

[2] https://www.bop.gov/inmateloc//index.jsp (search term "Christopher Rojuan Giles") (last viewed May 13, 2026).

Giles argues that he is entitled to a sentence reduction based on (1) his youth at the time of the offense; (2) changes in the law; (3) disparities between his sentence and sentences of similarly situated defendants; (4) disparities between his sentence and those of his codefendants; and (5) his successful efforts at rehabilitation. The government counters that Giles is not entitled to relief on any of these grounds.

## II. Analysis

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act ("FSA"), authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, Giles's requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

3

## A. Exhaustion

Giles presented evidence that he exhausted his administrative remedies, ECF No. 201-1, and the government does not contest exhaustion. Resp., ECF No. 207 at 3. Accordingly, the court finds that Giles has satisfied the statute's exhaustion requirements.

## B. 18 U.S.C. § 3553(a) Factors

While the court typically addresses whether a defendant has described an extraordinary and compelling reason for compassionate release before considering the 18 U.S.C. § 3553(a) sentencing factors, it need not do so. United States v. Bethea, 54 F.4th 826, 831, 833 (4th Cir. 2022). In Giles's case the court has determined that even if he established an extraordinary and compelling reason for a sentence reduction, it would deny his motion based on the § 3553(a) factors. See Bethea, 54 F.4th at 831. ("[E]ven if a movant satisfies the threshold eligibility requirement for obtaining relief, a district court has discretion to grant or deny relief based on its assessment of the salient § 3553(a) factors.")

The § 3553(a) factors include the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense; afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available and the applicable sentencing ranges; any pertinent policy statement; and the need to avoid unwarranted sentencing disparities among defendants.

4

Looking first at the nature and circumstances of the offense, Giles was a member of a large and long-running conspiracy that distributed heroin and other drugs that caused the overdose deaths of three people and serious bodily injury to three other people. The evidence showed that Giles continued to distribute heroin even after he knew that his customers were suffering deadly overdoses caused by the drugs. Pre-Sentence Investigation Report (PSR), ECF No. 109 ¶ 11. His callous disregard for the lives of the buyers of the drugs he was distributing weighs heavily against a sentence reduction.

Regarding Giles's history and characteristics, his father died when he was six years old and he and his siblings were raised by his mother and maternal grandmother. At age 11, Giles began smoking marijuana and getting into trouble with his brother. PSR, ECF No. 109 ¶ 68. As a juvenile, Giles's criminal record shows some involvement with firearms, id. ¶¶ 49, 61, but as an adult, the bulk of his convictions involved drug distribution rather than violent crime. Id. ¶¶ 50–51, 56–58. At sentencing, the prosecutor told the court that Giles was not involved with guns, other than being part of the conspiracy with a codefendant who was involved with guns. Sent. H'r'g Tr., ECF No. 128 at 13 in 5:14-cr-00052. In addition, once Giles was arrested, he promptly and fully accepted responsibility. Id. On the other hand, Giles's participation in the conspiracy was profit-driven and he was not simply sharing drugs with friends as was the case with some of his codefendants. Id.

Giles's institutional history is mixed. In January 2019, a complaint was filed alleging Giles possessed with intent to distribute Suboxone and possessed a prohibited object (Suboxone) while in prison. Giles was attempting to hide a package containing 210 strips of

5

Suboxone on his body and when it was discovered, he attempted to flush it down the toilet. Giles used PayPal to buy 1,000 Suboxone strips and sold them to other inmates for $10.00 to $15.00 per strip. United States v. Giles, No. 1:19-cr-00308-JHR (D.N.J. filed Jan. 15, 2019) at ECF No. 1. On April 25, 2019, Giles was charged via information with possessing and obtaining a prohibited object while in prison and pled guilty the same day. Id. at ECF Nos. 11, 14, 15. On September 12, 2019, Giles was sentenced to 27 months to be served consecutively to any other sentence and a 3-year term of supervised release. Id. at ECF No. 17. That Giles continued to sell drugs while incarcerated is extremely troubling and shows a continued pattern of disregard for the law.

In addition, between 2019 and 2023, Giles was found guilty on three disciplinary charges of refusing to obey an order, one charge of assault without physical injury (apparently related to the discovery of the Suboxone), one charge of phone abuse, one charge of possessing a dangerous weapon, one charge of possessing an unauthorized item, and one charge of giving or accepting money without authorization. Inmate Disp. Record, ECF No. 206-1 at 1–2.

More positively, since being incarcerated Giles has earned his GED, taken many additional classes, and as of March 2025 he was working as a safety clerk. He does not appear to have had any disciplinary incidents since July 2023. He is classified as being at medium risk of recidivism and at a low security level. Summary Reentry Plan, ECF No. 201-2 at 1–2. He appears to have a great deal of family support. Nevertheless, when taken as a whole, Giles's history and characteristics weigh against a sentence reduction.

6

Turning to the next factors, the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant, the court finds that Giles's sentence of 300 months remains appropriate. Giles's conduct, which was profit driven, resulted in the deaths of three people and the serious bodily injury of three people. The seriousness of the offense cannot be overstated, and the other factors continue to support a sentence that addresses the need to promote respect for the law and to protect the public from further crimes of the defendant.

Considering the need to avoid unwarranted sentencing disparities, the court carefully considered the relative culpability of Giles and his codefendants at the time it imposed the sentences.[3] All the defendants were found to have distributed drugs that led either to serious bodily injury or death of one or more victims. See PSR, ECF No. 109 ¶¶ 11–29. However, Giles was the source of the drugs involved in all the injuries and deaths. Id. The court considered the defendants' relative culpability at sentencing along with their criminal histories and the 18 U.S.C. § 3553(a) factors to arrive at the sentences imposed. Giles received the second longest sentence at 300 months, followed by Scott Pierce who was sentenced to 210

---

[3] The court uses the term "codefendants" to describe the people who were charged and convicted as part of this drug conspiracy, even though there were several indictments and informations filed in the prosecution of the conspiracy. See United States v. Pierce, No. 5:14-cr-00053 (W.D. Va. filed Nov. 13, 2014); United States v. Pennington, No. 5:14-cr-00030 (W.D. Va. filed June 25, 2014); United States v. Medina, No. 5:14-cr-00044 (filed Nov. 10, 2014); United States v. Butler, No. 5:14-cr-00031 (W.D. Va. filed Oct. 6, 2014); United States v. Alkire, No. 5:14-cr-00036 (W.D. Va. filed Oct. 16, 2014); United States v. Evans, No. 5:15-cr-00020 (W.D. Va. filed April 14, 2015).

7

months, id. ¶ 6; Eric Pennington who was sentenced to 204 months, id. ¶ 7; David Medina who was sentenced to 168 months, id. ¶ 5; Colin Butler who was sentenced to 150 months, id. ¶ 4; Brandy Kelly and Donna Jenkins, each of whom were sentenced to 108 months, id. ¶¶ 2, 9; and Stephanie Alkire who was sentenced to 72 months, id. ¶ 8. The court found at the time that the sentences were appropriate as they reflected the varying degrees of culpability among the defendants, with Giles being one of the most culpable because he directly supplied drugs to one of the victims who died and supplied drugs to the other defendants who distributed them to the other victims. The disparities between Giles's sentence and the sentences of the other defendants were justified at the time the court imposed the sentences and continue to be justified.

The situation involving the disparity that arose between Giles and codefendant Warren Evans, Jr., bears closer scrutiny. Evans and Giles were described as partners in the drug distribution conspiracy that resulted in the death and serious bodily injury of the victims described above. See Tr. of Evans's Guilty Plea H'r'g, ECF No. 49 at 2–5 in Case No. 5:15-cr-00020 (describing nature of drug distribution partnership of Giles and Evans). Between February 2013 and October 2014, Giles and Evans "had a pretty structured division of labor," with Giles acting as the source of the contacts for heroin distribution and Evans providing contacts for cocaine distribution and together distributing heroin, cocaine, and crack cocaine during the conspiracy. Id. at 2. They were described as working together on both a "macro" and "micro" level, from deciding where and how to store the drugs and the cash proceeds to driving around together making individual drug sales. Id. at 2–3. Both Giles and Evans knew

8

about the early overdose deaths and continued to sell drugs. Id. at 3–4. There was evidence showing a "pretty direct link" to Evans being involved in the distribution of drugs that resulted in the overdose of R.F.L. and evidence linking him to the distribution of drugs that resulted in the deaths and injuries of the other victims. Id. at 4–5.

Evans was indicted on one count of conspiring to distribute and possess with intent to distribute 1,000 grams or more of heroin, 280 grams or more of cocaine base (crack), and a detectable amount of cocaine powder, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 841(b)(1)(C) (Count 1). He also was indicted on one count of conspiracy to distribute heroin, the use of which resulted in the serious bodily injury and death of R.F.L., in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C) (Count 2). Indictment, ECF No. 18.

Evans entered into a Rule 11(c)(1)(C) plea agreement in which he pled guilty to both counts in exchange for a sentence of between 282 and 372 months. Plea Agreement, ECF No. 38 at 1-2 in 5:15-cr-00020. On June 15, 2016, Evans was sentenced to 372 months on each count, to run concurrently, and to be followed by a 5-year term of supervised release. J., ECF No. 53 in 5:15-cr-00020.

On January 17, 2025, Evans was granted clemency by President Joseph Biden and was released from custody on July 16, 2025.[4] Thus, although the court sentenced Evans to serve 31 years, or 6 more years than Giles, Evans was released after serving 10 years while Giles has almost 12 more years to serve.

---

[4] https://www.bop.gov/inmateloc/ (search term "Warren Evans") (last viewed May 21, 2026).

9

As a result, a sentencing disparity was created when Evans was granted clemency and released while Giles remained in custody, but it is not clear that the disparity was unwarranted. The government points out that Giles applied for executive clemency in 2020 and his request was denied on December 28, 2023, and that he has since reapplied for clemency and his application is pending.[5] The court cannot discern the reason that Evans was granted clemency while Giles was not and in any event, it is outside the purview of this court to second-guess the clemency decisions. The President has the sole power to grant pardons and commute sentences, Rosemond v. Hudgins, 92 F.4th 518, 525 (4th Cir. 2024), and it is not for the judicial branch to determine the standards for the discretionary granting of clemency or pardon. Cavazos v. Smith, 565 U.S. 1, 9 (2011). Accordingly, while the court acknowledges the disparity between Giles's and Evans's sentences, it cannot find that the disparity is unwarranted, and the disparity does not outweigh the other § 3553(a) factors, which support the conclusion that Giles's sentence should not be reduced.

For the reasons stated above, the court concludes that a sentence reduction is not called for in Giles's case. Given the circumstances, including the grievous nature of the offenses and Giles's institutional history, the court finds that a sentence of 300 months continues to be appropriate. Such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of Giles's conduct and criminal history, promote respect for the law, provide just

---

[5] https://www.justice.gov/pardon/search-clemency-case-status (search term "Christopher Giles") (last viewed May 22, 2026).

punishment, afford specific and general deterrence, and protect the public. <u>See</u> 18 U.S.C.

§ 3553(a).

### III. Conclusion

For the above-stated reasons, the court **DENIES** Giles's motions for compassionate

release, ECF Nos. 201 and 206.

An appropriate order will be entered.

It is so **ORDERED**.

Entered:  June 22, 2026

Michael F. Urbanski
Senior United States District Judge

11